By the Court.

Nisbet, J.
delivering the opinion.
We have no doubt but that this bill was demurrable for mulfifariousness. We do not favor this ground of demurrer, but there are cases in which the principles of justice require it to be sustained. This is one of them, as we think, easily demonstrable. But inasmuch as the bill must go out of Court upon a ground of demurrer vitally effecting its legal merits, I shall coniine the discussion to that ground. ,
[!.] According to the view' which we have taken of this cause, the complainant, Major Howard, has no right to sue as he has brought this suit, in his individual character. The demurrer makes the question whether he has or not, for it asserts that <£ Howard was not .the proper party complainant, and could not maintain this bill, the injuries eomplained of bdirig against the Water Lot CompanyThe complainant represents himself as having an interest in certain water lots, originally purchased by himself and one Josephus Eehols,of the City of Columbus, In the deed from the City of Columbus to them, they covenant to erect a dam across the river, and to construct a canal on the line of the lots, -so capacious as to receive all the water of the stream at low water, and to keep it -in good repair ; and that the lots and the improvements thereon, and no -other property whatever, should be liable for the damage which might grow out of *563 a breach. He and Echols being at first proprietors of the whole, sold one-half of the property to Carter and Baird, he retaining one-fourth interest, and Echols the remaining one-fourth interest. He represents that himself and his co-tenants, were incorporated under the name and style of the Water Lot Company of the City of Columbus, forthe purpose of more effectually carrying out their views in the sale of the property, constructing waterworks, &c. That the Company was organized under the charter, and he, himself, elected President, and that he continues to hold the office of President to the present time. The bill farther charges, that the Water Lot Company sold to the defendant, Brooks, one of the lots belonging to them, and that the defendant, John G. Winter, was equally interested with him in the purchase; that Brooks covenanted with the company that this lot, and the water privileges connected with it, should be used alone for the purpose of a saw mill or saw mills, and contrary to the covenant, they had erected a large house thereon, and were engaged in the manufacture of various articles, such as buckets, pails, &c. &c. requiring a great deal of machinery, and the accumulation of lumber and other combustible material ; that after a fruitless attempt by the Water Lot Company to enjoin them from such use of the land so bought by them, they had sold to Colquitt, Baird and Spencer, an interest in their manufactory ; and that these proprietors, contrary to the original covnant, were pioceeding to erect another large building for the purpose of conducting the said manufacture of the various articles aforesaid. Of the erection and.proposed use of this building, Howard makes complaint; charges that it is in violation of the covenant — that it will increase the risk by fire, of the property of the company, in which he has an interest, and prays that they be enjoined and restrained from the erection and use of the building for any purpose, save that of a saw' mill.
He charges also, that these defendants had erected a kiln for drying lumber, on the line of the canal, upon property belonging to the Water Lot Company, so near to the other property of the company, in w'hich he is interested, as greatly to subject it to. *564 the danger of loss or destruction by fire, and prays that the use of this kiln may be enjoined, as being a nuisance.
The complainant farther charges, that the proprietors of the Variety Works, Broojcs, Winter, Colquitt, and others, assuming to act as the Water Lot Company, but without authority from the company, and against the wishes of the complainant; together with the Eagle and Howard Manufacturing Company, the original dam and canal being broken by a flood in the river, were proceeding to construct a new dam and to open a new canal or race, for the purpose of affording the required supply of water to the different proprietors; that this new dam will cause the unsold lots of the company to be overflowed, increase the expense of keeping up a canal according to his original' covenant with the City ; will endanger the eastern line of the present canal ; increase the supply of water to which the proprietors of the Variety Works are entitled by their contract with the company; and will release the obligation which the two manufacturing companies came under to pay their relative proportions of the expense of keeping up the canal. He charges that all of this is in violation of his rights, as the owner of one-fourth of the property of the Water Lot Company, and prays that they maybe enjoined and restrained from the farther construction of this dam. All these .several trespasses, he charges, are not capable of redress at Law; that the damages to him cannot be ascertained by proof, and will be irreparable. This statement covers the material parts ot the bill. A large amount of matter, out of which -grew some important questions, is intentionally omitted, as being irrelevant to the question upon which the decision is made.
[2.] Without saying whether the bill makes a .case where Equity will interfere or not, we are clear, that for the injuries <compfetine.d of, the Water Lot Company alone can sue. There are three distinct grounds of complaint in the bill, to wit: the erection of the building by Brooks, "Winter and others, with a view to manufacturing purposes, the kiln for drying lumber, and the construction of a new dam across the Chattahoochee. All 'these are charged to be to the damage of the complainant, Howard- *565 He, in his personal character, asks relief by injunction. He is the sole party complainant, and he grounds his right to relief upon his ownership of the one-fourth part of the unsold water lots. So far as relief against the proprietors of the manufacturing establishment is sought, upon the score of a violation of their covenant, the complainant has no standing in Court, because they made no covenant with him, whatever. Their undertaking was to the Water Lot Company — with that Company, and not with Mejor Howard, did they stipulate to use the lot which they purchased, alone for the purposes of. a saw mill. There is, therefore, no privity between them and the complainant, and without that he is not entitled to sue. The same things may be said of the case, so far as the relief against the erection of the new dam depends upon the alleged release of the Eagle and Howard Manufacturing Companies from their obligation to pay their proportionable part of the expense of keeping the canal in good repair. That obligation was assumed, not to Howard, but to the Water Lot Company. But the proposition which covers the whole case is this: by accepting the act of incorporation, the title to these water lots vested in the corporation ; Major Howard’s title to the one-fourth as tenant in common, was of course divested; and these things being so, no person can sue for the injuries done or anticipated, but the corporation. That the Water Lot Company can sue for these trespasses, there is no doubt. Angel and Ames on Corporations, 312. Com. Dig. Hile Franchise, (1 Kyd. 187.) Whether Equity would grant relief, would depend upon the case made. The Act was passed in 1845, and, it would seem, at the instance of the complainant and the other original purchasers of these lots. They are named in the Act, and are declared to be a body corporate, by the name and style of the Water Lot Company of the City of Columbus. They are clothed with the attributes of a corporation, such as the right to sue and be sued, the use of a common seal, succession, &c. &c. The bill shows that these persons (the complainant and his associates) accepted the charter. They accepted it by the election of officers, (Howard himself being elected President of the *566 Company,) by executing contracts and making deeds, and instituting suits in the corporate name.
And by accepting the charter, they assumed the obligations and became entitled to the privileges which it creates. They came under all the disabilities which it imposes, one of which, as I expect to show, is incapacity to sue for injuries to these lots in their individual characters. Angel & Ames, on Corporations, 51, ’, ’3, ’4. 1 Greenleaf's Me. R. 79. 3 T. R. 240. 1 Ibid, 589. 3 Barrow, 1656. 2 Dow & Clark, 21. 7 Bing. 1. 7 Dow & R. 267. 4 Barn. & C. 781. Acts of 1845, 123.
The preamble of the Act of 1845, recites the Act of the Legisla! ure authorizing the City of Columbus to define Bay street, and to lay off water lots on its western boundary, and to sell the same, it states, that John H. Howard and others, had become purchasers of these water lots, and refers to the improvements, to wit: the dam and canal, which they had covenanted to make ; and proceeds to declare, in order to enable the said Howard and his associates, owners of said water lots, to conduct their affairs and carry on their operations with greater facility, Be it enacted, &c. &c.
The Act gives to the corporation unlimited power to buy, sell and hold, real estate. An exceedingly unwise grant, in my poor judgment. It constitutes the parties in interest in the water lots, a Board of Directors, with power to appoint officers and to sell the lots, and prescribes the manner of executing titles to the same. From all of which it is perfectly plain, that the proprietors of these water lots were created into a coiporation, for the purpose of more easily vending and improving the water lots which they held in common. These lots were the only capital stock of the company. The interest which they held in them, became the value of the shares of each corporator. No provision is made for any other slock. It is a private civil corporation, based upon the water lots as its primary capital stock. The first object of the corporation, unquestionably was the sale of the water lots. Now under all these enactments, under the charter and objects of this incorporation) who can doubt for a *567 single moment, but that when the charter was accepted, the title to the lots vested by operation of law, in the corporation, and that the original proprietors, instead of holding title as tenants in common, became the owners of an interest (call it stock if you please) in the entire capital, measured by the quantum of their interest originally in the lots. This was necessary to make the franchise at all available — this was indispensable to accomplish the object which the corporators had in view' — for how could the corporation sell these lots without a title ? Who would buy from them ? Acting upon this view of the. matter, we find that after the charter was accepted, all the sales were made by the corporation. Clearly, the title could not be in the original proprietors and in the corporation at one and the same time. A charter cannot be accepted partially, or conditionally, or for a limited time. If it is received but for an hour, it is conclusive and obligatory. Angel Ames, 55. 4 M. & S. 255.
Resisting the idea that the title vested in the corporation, counsel rely upon the text of Angel fy Ames to the effect, that the mere incorporation of tenants in common, does not vest the title, but a conveyance must be made by the individuals to the corporation. This is an incontrovertible proposition. But it contemplates a very different case from that before us. If a company of gentlemen are tenants in common of a body of land, and are incorporated for a definite object — as manufacturing, for example — the mere act of incorporation does not vest the title in the corporation, no more than it would vest the title of any one of them to his mansion-house. But. if these tenants in common are incorporated for the very purpose of vending the land held in common, which is the very case in hand, I apprehend the result would be very different. The text of Angell & Ames is supported by the case of Liffingwell vs. Elliot, in 8 Pick. 455. Upon looking into that case, I find that several persons were tenants in common of seventy-five acres of land, and whilst so tenants, used it for the purposes of a manufacturing establishment. Afterwards, they were incorporated by Act of the Legislature. The Act makes no allusion to the land, but merely authorizes the company to hold real estate. The corporation was *568 organized agreeably to the Statutes of Massachusetts, regulating manufacturing companies, and the corporate stock was divided Into a certain number of shares. The Supreme Court of Massachusetts, under these circumstances, held that the mere incorporation of the tenants in common, to enable them to carry on more ■conveniently a common object, does not vest in the corporation :a title to the land which they had previously used for the same ¡purpose. That Court could have made no other decision. How different is this case ?
Having established, as I must think conclusively, that the ti-fie to these lots vested by the charter and its acceptance-, in the •corporation, it needs no argument to show that it alone can sue for injuries to the corporate property. If the corporation alone •can sue, then Major Howard has no right to sue, and must go beaae, without his cost.
It will be remembered that the complainant, Howard, covenanted with the City of Columbus, to build and keep in good order, a dam across the river Chattahoochee, and a canal of certain ■capacity described in the deed from the City to him and Echols, for these water lots. It will also be remembered, that he charges in 'his bill that the construction of the new dam will greatly •damage .the canal, and thus visit him with liability on his covenant. It might be claimed from these facts, that upon the score of his liability upon his covenant to the City, even if the title to fheselots does vest in the corporation, heis entitled to bring this bill. In looking into the covenant we find, that by express .-stipulation, the lots themselves, and the improvements put upon them, and no other property whatever, are made liable for any damage that may result from a breach of it. This being the ■case, he is not personally chargeable on his covenant, and the property is chargeable in the hands ofthe corporation. He, therefore, on the ground of the covenant, has no right to sue, and the corporation on that ground, has the right.
Again, the bill charges that Colquitt and his associates, assuming to act as the Water Lot Company, but without authority from the company and against the wishes of the complainant, are proceeding to construct the dam, which will damage him in the *569 particulars before stated. It may be said that from this allegation it is inferable, that the pleader designed to charge these defendants, as directors of the Water Lot Company, with a fraudulent management of the affairs, and to restrain them from so doing farther. If, however, such was his purpose, which we do not believe, he has signally failed to make such a case as would give a Court of Chancery jurisdiction.
[3.] It is proper here to say, that whilst corporations are amenable to the Courts generally, according to the course of the Common Law, for the misuser or nonuser of their franchises, yet it is true, that the persons who are in the exercise of the corporate powers, may, in their character as trustees, be accountable to a Court of Chancery for a fraudulent breach of trust. If then, the directors of this, or any corporation, should refuse to prosecute, by collusion with those wrho had made themselves answerable by negligence or fraud, or if the corporation is still under the control of those who must be made defendants in the suit, the stockholders (or any one of them for himself and the others) who are the real parties in interest, may file a bill in - their own names. In sueh a case, the averments in the bill should clearly and distinctly give jurisdiction, for Equity interferes with great caution with the Common Law jurisdiction over corporations. In such a bill, the corporation must be made a party defendant. Such a case as would give jurisdiction is not made in this bill; indeed as before stated, is not attempted to be made. Attorney General vs. The Utica Insurance Company, 2 Johnson’s Ch. R. 389. Robinson vs. Smith, 3 Paige R. 222. Ogden vs. Kip, 6 Johns. Ch. R. 160. 3 Atk. R. 400. Wood’s Inst. B. 1 Ch. 8 p. 110. 11 Coke R. 986. Hichens vs. Congrove, 5 Rup. R. 562. Angell & Ames on Corp. 251, 252.
Let the judgment be reversed.